1   KENNETH R. O'BRIEN, Bar No. 072128
    LITTLER MENDELSON
2   A Professional Corporation
    2520 Venture Oaks Way
3   Suite 390
    Sacramento, CA  95833.4227
4   Telephone:    916.561.5300

5   Attorneys for Defendant
    AMERICAN AIRLINES, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  EDWARD E. ANDERSON,                 Case No.  07-cv-3527 WHA

12                 Plaintiff,           **NOTICE OF MOTION AND MOTION
                                        FOR SUMMARY JUDGMENT AND/OR**
13       v.                             **SUMMARY ADJUDICATION OF CLAIMS
                                        AND OR JUDGMENT ON THE**
14  AMR the parent of AMERICAN          **PLEADINGS; MEMORANDUM OF**
    AIRLINES, INC., AMERICAN            **POINTS AND AUTHORITIES IN**
15  AIRLINES, INC.,                     **SUPPORT THEREOF**

16                 Defendant.           Date:    May 29, 2008
                                        Time:    8:00 a.m.
17                                      Ctrm:    9
                                        Judge:   William Alsup
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833 4227
916 561 5300

# NOTICE OF MOTION

TO PLAINTIFF AND HER ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, May 29, 2008, at 8:00 a.m., or as soon thereafter as this matter may be heard in courtroom 9 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant American Airlines, Inc. ("American") will move this Court for an order as follows:

a.      For Summary Judgment and/or Summary Adjudication as to Plaintiff's First, Second, Third and Fourth Claims for Relief on the grounds that there are no triable issue of material fact with respect thereto; and/or

b.      For Judgment on the Pleadings as to Plaintiff's Third Claim for Relief on the grounds that it fails to state a claim on which relief may be granted.

Defendant's motion will be based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Complaint, the Answer, the Declarations of Kenneth R. O'Brien, Sandra Adams, Ron Olson, Jocelyn Javier, and Katherine Harris filed in support hereof, the Declaration of Diane Dildy in Support of Removal filed herein on July 7, 2008 (District Court Doc. # 2), and the papers filed herein.

Dated: April 24, 2008                          Respectfully submitted,


                                               /s/Kenneth R. O'Brien
                                               KENNETH R. O'BRIEN
                                               LITTLER MENDELSON
                                               A Professional Corporation
                                               Attorneys for Defendant
                                               AMERICAN AIRLINES, INC.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

# TABLE OF CONTENTS

PAGE

I.   PROCEDURAL HISTORY..................................................................................... 1

II.  SUMMARY OF ARGUMENTS ........................................................................... 1

III. ALLEGATIONS OF THE COMPLAINT AND AFFIRMATIVE DEFENSES ................... 1

IV.  STATEMENT OF FACTS ................................................................................ 3

V.   LEGAL STANDARDS ...................................................................................... 7

     A.   Standards as to Motions for Summary Judgment ....................................... 7

VI.  ARGUMENT .................................................................................................. 9

     A.   Plaintiff cannot prevail on his claim that his tip income was reduced as a result
          of his shift, schedule or curb side assignment because the statute of limitations
          bars such a claim ............................................................................................. 9

     B.   Plaintiff cannot prevail on his claim that his tip income was reduced by
          unlawful discrimination because he has no evidence that any decisions
          affecting his employment were based on unlawful animus ...................... 12

     C.   Plaintiff cannot prevail on his claim of retaliation.................................... 13

     D.   Plaintiff cannot prevail on his claim for negligent infliction of emotional
          distress as his claim fails to state a claim on which relief can be granted and
          would in any event be barred by the statute of limitations ...................... 14

     E.   Plaintiff's cannot prevail on his claim for intentional infliction of emotional
          distress as there is no triable issue  of fact material to the disposition of his
          claim......................................................................................................... 15

VII. CONCLUSION................................................................................................. 16

# TABLE OF AUTHORITIES

PAGE

## CASES

Balloon v. Superior Court
(1995) 39 Cal. App. 4th 1116 ............................................................................ 10

Bradley v. Harcourt, Brace and Co.
(9th Cir. 1996) 104 F.3d 267 ........................................................................ 9, 12

Celotex Corporation v. Catrett
(1986) 477 U.S. 317 ......................................................................................... 8

Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund
(2001) 24 C. 4th 800 ........................................................................................ 14

Compton v. City of Santee
(1993) 12 Cal. App. 4th 591 .......................................................................... 9, 12

Connecticut v. Teal
(1982) 457 U.S. 440 ......................................................................................... 13

Davies v. Krasna
(1975) 14 Cal. 3d 502 ....................................................................................... 11

Edwards v. United States Fid. & Guar. Co.
(ND CA 1994) 848 F. Supp. 1460 ................................................................... 14

EEOC v. Crown Zellerbach Corp.
(9th Cir. 1983) 720 F. 2d 1008 ........................................................................ 14

Fermino v. Fedco, Inc.
(1994) 7 C. 4th 701 ........................................................................................... 14

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.
(9th Cir. 1989) 896 F.2d 1542 .......................................................................... 9

Horn v. Cushman & Wakefield
(1999) 72 Cal. App. 4th 798 .......................................................................... 9, 12

Horsford v. Bd. of Trustees of Calif. State Univ.
(2005) 132 Cal. App. 4th 359 ........................................................................... 10

Janken v. GM Hughes Electronics
(1996) 46 Cal App 4th 55 ................................................................................. 15

Ledbetter v. Goodyear Tire &  Rubber Co.
(U.S. 2007) 127 S.Ct. 2161 .............................................................................. 11

Lujan v. Nat'l Wildlife Fed.
497 U.S. 871, 888 (1990) ............................................................................... 8, 12

Lyles v. State of California
(2007) 153 Cal. App. 4th 281 ........................................................................... 11

Matsushita Electrical Industry Co. v. Zenith Radio Corp.
475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1433 (1986) .................................. 8

National Railroad Passenger Corp. v. Morgan
(2002) 536 US 101 ........................................................................................... 10

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833 4227
916 561 5300

DEFENDANT'S OBJECTION TO
PLAINTIFF'S EXPERT DISCLOSURES (NO.
C 03 3671 PJH)

ii.

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3    Porter v. California Dept. of Corrections
        (9th Cir. 2004) 383 F. 3d 1018 ........................................................................ 10

4

    Semore v. Pool

5        (1990) 217 Cal. App. 3d 1087 ........................................................................ 14

    Taylor v. City of Los Angeles Dept. of Water & Power

6        (2006) 144 Cal. App. 4th 1216 ........................................................................ 10

7    The Jeanery, Inc. v. James Jeans, Inc.
        (9th Cir. 1988) 849 F.2d 1148, 1151-52 ....................................................... 9, 12

8    Vasquez v. County of Los Angeles
        349 F. 3d 634 ................................................................................................... 13

9

**STATUTES**

10    Cal. Code Civ. Proc.
        § 335.1 .......................................................................................................... 15, 16

11    Cal. Code Regs.
        tit. 2, § 7287.8, subd. (a) ................................................................................ 10

12

    Fed. R. Civ. P.

13        56(c) ................................................................................................................ 8

14    Fed. R. Civ. P. Rule
        56(e) ................................................................................................................ 8

15    Govt. C.
        § 12940, subd. (h) ...................................................................................... 10, 14

16

    Murray v. Oceanside Unified School Dist.

17        79 Cal App 4th 1338 ....................................................................................... 15

**OTHER AUTHORITIES**

18

    Cal. Lab. C.

19        § 1182.12 .......................................................................................................... 4

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916 561 5300

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant American Airlines, Inc. ("American") submits the following Memorandum Of Points And Authorities in Support of its Motion for Judgment on the Pleadings and/or Summary Adjudication of Claims.

### I.
### PROCEDURAL HISTORY

Plaintiff filed his complaint in the Superior Court of the State of California, in and for the County of San Francisco on January 9, 2007. A copy of the complaint and summons were served on American's agent for service of process (CT Corporation) on June 8, 2007. American filed its answer in the Superior Court on July 5, 2007. American removed this action to the United States District Court, Northern District of California, on July 6, 2007. Removal was predicated on diversity. AMR Corporation, the parent company of American, has not been served or appeared in this action.

### II.
### SUMMARY OF ARGUMENTS

American seeks summary judgment and/or summary adjudication of plaintiff's first, second, third and fourth, on the grounds that there are no triable issue of fact material to the disposition of said claims. American seeks judgment on the pleadings as to plaintiff's third claim for relief on the grounds that it fails to state a claim on which relief can be based.

### III.
### ALLEGATIONS OF THE COMPLAINT AND AFFIRMATIVE DEFENSES

Plaintiff's complaint alleges that he previously worked as a skycap for Trans World Airlines ("TWA") at its curbside location at San Francisco International Airport ("SFO") (Complaint, ¶ 4.) He further alleges that he became employed by American Airlines when American acquired the assets of TWA in December, 2001. (Complaint, ¶ 4, Plaintiff's deposition ("Pl. Dep.") 25:13-16 and Exhibit 2 thereto[1]; Declaration of Ron Olson filed herewith ("Olson Dec."), ¶ 3;

---

[1] True and correct copies of relevant deposition testimony and deposition exhibits are attached to the Declaration of Kenneth R. O'Brien filed herewith, as Exhibits A and B, respectively.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

1.

1    Declaration of Jocelyn Javier filed herewith ("Javier Dec."), ¶ 3.) Plaintiff alleges that, on August

2    15, 2005 American instituted a change in its procedures which applied to *any and all* skycaps

3    company-wide who service American's passengers. This change required all such skycaps, whether

4    they are employed directly by American or employed by companies with whom American contracts

5    to provide skycap services, to collect a $2 per bag check-in fee for each bag checked at curbside by

6    American Airlines passengers. (Complaint ¶ 5.) This fee is not a tip for skycaps but is a per bag

7    charge imposed and collected by all skycaps and paid to American. Skycaps continue to receive and

8    are free to solicit tips. (Pl. dep., 158:16-22, 167:4-10.)

9        Plaintiff's complaint *falsely* alleges that "one of the effects the new system is that

10   skycaps are assigned to a certain location." (Complaint, ¶ 5.) The complaint also alleges that

11   location is important because it can impact income received by tips. (Complaint, ¶ 5.) Plaintiff also

12   alleges that "on or before August 15, 2005, defendants had given Mr. Anderson less desirable hours

13   ... [in that] he was scheduled to four-hour shifts and assigned to less desirable locations."

14   (Complaint, ¶ 8.) He also alleges that he was not allowed to move to other AA cities. (Complaint, ¶

15   8.) Plaintiff alleges that these actions were taken against him because of his age and race.

16   (Complaint, ¶ 8.) He also alleges that these actions were taken in retaliation against him because he

17   "spoke up for himself and others." (Complaint, ¶ 12.) Finally, he alleges that American's actions

18   caused a reduction in his tip income. (Complaint, ¶ 12.) Plaintiff filed an administrative Charge of

19   Discrimination with the California Department of Fair Employment & Housing ("FEHA") on

20   January 24, 2006 and was issued a Right to Sue letter on January 25, 2006. (Complaint, ¶ 9

21   Declaration of Kenneth R. O'Brien ("O'Brien Dec."), ¶ 7.)

22       Defendant's answer asserts *inter alia*, defenses based on failure to state a claim

23   (Answer, First Affirmative Defense), based on plaintiff's failure to comply with applicable statutes

24   of limitations (Answer, Eleventh Affirmative Defense) and based on workers' compensation

25   preemption (Answer, Twenty-first Affirmative Defense.) In addition, American denies that it

26   committed any unlawful act against plaintiff.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303                2.

## IV.
## STATEMENT OF FACTS

Plaintiff served his Complaint on American by serving its agent for service of process on June 8, 2007. American is the only defendant who has been served. (O'Brien Dec., ¶ 6.) In any event, AMR has no employees and Plaintiff only worked for American Airlines. (Declaration of Diane Dildy in Support of Defendant American Airlines, Inc.'s Notice to Federal Court of Removal of Civil Action from State Court, filed July 7, 2007, District Court Doc. 2, ¶¶ 7, 8.)

As noted, Plaintiff alleges that he previously worked as a Skycap at SFO International Airport for Trans World Airlines ("TWA"). (Complaint, ¶ 4.) Plaintiff admits that, before he went to work for American, American had no employee-skycaps at SFO, and that American used a contract company—Globe—which in turn hired employees who performed skycap duties (Pl. dep., 47:7-25.) Plaintiff testified that Globe is now known as "G2" and continues to provide the vast majority of skycap services at American's SFO operation. (Pl. dep., 48:1-6.) Skycaps posted at American's SFO curbside location work two separate, fixed, belts which bring luggage from the curbside into the terminal. (Pl. dep., 100:3-20.) Automotive traffic at SFO approaches these belts moving from east to west, dropping off passengers and luggage at computer podiums used by the skycaps to check perform check-in and other services. (Pl. dep., 67:25, 68:1-6.) At the time plaintiff joined American, and up through the present day, G2 skycaps begin their workday as early as 3:30 or 4:30 a.m. (Pl. dep., 51:21-22, 118:6-20.) Naturally, these skycaps work the belt closest to the arriving traffic (the eastern-most belt) and set up their podiums there. (Pl. dep., 118:6-20.) Plaintiff, whose shift begins several hours later, always worked the west end of the curb working the other belt. (Pl. dep., 57:4-23.)

In December 2001, American acquired the assets of TWA out of bankruptcy and plaintiff and other TWA skycaps were offered and accepted employment with American at SFO. (Plaintiff's deposition ("Pl. Dep."), 25:13-16 and Exhibit 2 thereto; Olson Dec. ¶ 3, Javier Dec. ¶ 3.) Although Plaintiff was 68 at the time (Pl. dep., 41:9-11), he was the least senior of the approximately four TWA skycaps who joined American at SFO (Pl. Dep., 40:2-21, 41:5-6, 41:19-23, 50:4-6, 177:3-15 (testimony correcting earlier statements that six TWA skycaps joined American.) Plaintiff

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

3.

1   and all but one of the other TWA skycaps who were hired were African-American, all of them were

2   over 40 and all of them were older than Plaintiff (Pl. dep., 42:4-12, 44:16-25, 45:1-3.)  Over time,

3   the other TWA skycaps who were hired by American have retired and plaintiff is the only remaining

4   skycap employed by American at SFO (Pl. dep., 42:13-25, 45:4-6, 66:18-23.)  When he was working

5   at TWA, plaintiff received an hourly wage and tips; at American his hourly wage has increased and

6   he continues to receive tips.  (Pl. dep., 36:5-25, 37:1-3.)  Plaintiff testified that his rate of pay is

7   approximately $11 per hour, substantially higher than the state's minimum wage law of $8.00 per

8   hour.  (Pl. dep., 37:7-13; Cal. Lab. C. § 1182.12)[2]  The number of skycaps working at G2 servicing

9   American's passengers have also gone down over the years (Pl. dep., 98:16-23), and that "they got

10  rid of some" G2 skycaps.  (Pl. dep., 91:18-21.)  American continues to contract with G2 for the

11  provision of skycap services at SFO, who provide the vast majority of skycap services for arriving

12  American passengers.  (Pl. dep., 45:7-9; Olson Dec., ¶ 4; Javier Dec. ¶ .)

13         Plaintiff testified that when the TWA skycaps were hired by American, a group

14  meeting took place in December 2001 between American's supervisor Ron Olson and the new

15  American (former TWA) skycaps.  (Pl. dep., 37:19-25, 38:1-25, 39:1-25.)  Plaintiff claims[3] that at

16  that December 2001 meeting, Mr. Olson informed plaintiff that he would have a four hour shift (Pl.

17  dep., 37:19-25, 38:6-14, 39:7-15), told him what his hours would be (Pl. dep., 49:13-19), told him

18  where his curbside location would be, and told him that the TWA skycaps would not be able to

19  transfer (Pl. dep., 69:8-19.)  About three weeks after this meeting, Mr. Olson and plaintiff agreed

20  that his hours would be from 8:00 a.m. to noon.  (Pl. dep., 53:13-22, 140:24-25, 141:1-25, 143:1-25,

21  144:1-12.)  This shift has been in place for plaintiff the entire time he has worked for American.  (Pl.

22  dep., 44:10-15; Olson Dec. ¶ 3; Javier Dec. ¶ 3; Harris Dec., ¶ 2.)  After it was established that he

23  would start working at 8:00 a.m., plaintiff has not asked to start at any other earlier time.  (Pl. dep.,

24  143:15-25, 144:1-12.)  With respect to his work hours, plaintiff testified that he "could see" that Mr.

25  Olson "was right" that there were already enough skycaps working the east end of the curb who

26  started early.  (Pl. dep., 143:20-25, 144:1-12.)  Accordingly, plaintiff testified that he suggested, and

27  [2] Mr. Anderson's exact hourly wage rate is $11.88.  Javier Dec., ¶ 7.

28  [3] For purposes of this motion only, American accepts plaintiff's version of events concerning his hours, shift and curb side location assignment simply to show that no triable issue of fact material to the disposition of his claims exist.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833-4227
916 561 5300

1    that Mr. Olson agreed, that plaintiff would begin his shift at 8:00 a.m. at the west end of the curb and

2    work until noon. (Pl. dep., 143:20-25, 144:1-12.)

3         Thus, as to his claim that he was given less desirable hours and shift times, plaintiff

4    claims that his schedule was set when he came to work for American in December 2001. (Pl. dep.,

5    21:25, 22:1-15, 44:8-15, 49:13-19, 141:17-25, 142:1-24).  And as to his claim concerning his

6    location assignment, Plaintiff also testified that his west curbside location assignment was made in

7    December 2001 (Pl. dep., 55:9-25, 56:1-5, 56:15-16, 57:4-6, 65:20-25.)  Thus, contrary to the

8    allegations of Paragraph 5 of his Complaint, plaintiff's hours, shifts, and curb side location had

9    nothing whatsoever to do with the implementation of the curb side bag check fee in 2005.

10        Each American and each G2 skycap uses a machine (sometimes referred to as a

11   podium), to issue baggage tags to arriving passengers.  (Olson Dec., ¶ 4; Javier Dec., ¶ 4; Harris

12   Dec. ¶ 3.)  American skycaps are instructed to use a specific podium to easily allow American to

13   keep track of the baggage tag process on a daily basis.  (Olson Dec. ¶ 4; Javier Dec. ¶ 4; Harris Dec.

14   ¶ 3.)  American skycaps and G2 skycaps use the same kind of podium.  (Pl. dep., 129:20-25, 130:1-

15   5.)  Because G2 supplies the vast majority of skycap service at SFO, they are assigned most of the

16   podiums.  (Olson Dec., ¶ 4; Javier Dec., ¶ 4).  All of the podiums have problems on occasion and

17   require service, maintenance, or repair.  (Pl. Dep., 129:20-25; 130:1-5; Olson Dec., ¶ 4; Javier Dec.,

18   ¶ 4.)  The same company and individuals service the podiums of all of the SFO skycaps.  (Pl. dep.,

19   129:20-25; 130:1-5; Olson Dec., ¶ 4,; Javier Dec., ¶ 4,; Harris Dec., ¶ 3.)  Curbside and podium

20   assignments and repair and maintenance orders are never made or based on the race or age of the

21   skycap whose podium is involved.  (Olson Dec., ¶ 4, 6; Javier Dec., ¶ 4, 7; Harris Dec., ¶ 3, 5.)

22        As noted above, Plaintiff alleges that on August 15, 2005, American instituted a new

23   practice for passengers who check in at curbside.  (Complaint, ¶ 5.)  The new practice imposes a $2

24   per bag fee curb side check in fee (Pl. dep., 54:4-9; 87:5-20; Olson Dec., ¶ 5; Javier Dec., ¶ 6.)  The

25   fee is not a tip or gratuity for the skycaps and is collected and accounted for both by plaintiff and the

26   G2 skycaps who must keep and reconcile records and fees collected, and turn in paperwork

27   documenting their baggage transactions.  (Pl. dep., 79:5-13, 87:10-24, 88:2-24, 149:12-14; Olson

28   Dec., ¶ 5; Javier Dec. ¶ 6.)  Plaintiff admits that both he and all the G2 skycaps perform these new

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO.  C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303                    5.

1  duties. (Pl. dep., 87:19-25, 88:1-24, 105:15-25, 106:1-5.)    Because these were new duties and

2  responsibilities to be performed by the skycaps, American's skycaps were informed in writing that,

3  if they wished, they could elect layoff in lieu of taking on the additional responsibilities, and obtain

4  severance pay, something which plaintiff did not elect to do. (Pl. dep., 161:3-25, 162:1-11, Ex. 2 to

5  plaintiff's deposition; Olson Dec., ¶ 5.)  Plaintiff and the G2 skycaps continue to solicit and receive

6  tips. (Complaint, ¶ 5, 3:7-8, Pl. dep., 158:16-22; Olson Dec. ¶ 5; Javier Dec., ¶6.)

7        Although not specifically plead in his complaint, Plaintiff also testified that, from

8  time-to-time, the podium to which he is assigned has temporary problems which cause it to be out of

9  service on occasion.    (Pl. dep., 94:8-25, 95:1-25, 96:1-23.).    At his deposition, he provided

10  documents on which he personally noted the dates of any such difficulties. (Pl. dep., 94:8-25, 95:1-

11  25, 96:1-23.)  Plaintiff's own records make it clear that such problems occurred on only 18 days

12  since the bag charge was instituted.  (Declaration of Sandra Adams ("Adams Dec."), filed herewith,

13  ¶ 7.)  Assuming that plaintiff worked on average 20 days per month since the fee was instituted, this

14  means that his machine has had problems on only 18 days out of 640 days he has worked.

15  Furthermore, Plaintiff's own records show that the greatest number of consecutive work days on

16  which he claims his podium was out of commission was four days—from October 28 to October 31,

17  2007. (Adams Dec.,¶ 7.)  If plaintiff's machine is temporarily out of commission, he takes on line

18  training and still receives his hourly pay while the podium is being repaired. (Pl. dep., 121:16-25,

19  122:1.)

20        Plaintiff admits that G-2 skycaps use podiums similar to his and further admits that

21  machines used by the G-2 skycaps also occasionally break. (Pl. dep., 129:20-25, 130:1-5.)  Plaintiff

22  also admits that the same contract employees who fix the G-2 machines fix his when there is a

23  problem.  (Pl. dep., 129:20-25, 130:1-5.)   He also admits that all of his supervisors and the

24  individuals who fix his machine appear genuinely desirous of getting the machine up and running

25  and that none of them have made any comments or remarks suggesting that his race or age motivates

26  their actions, including how his podium was assigned, serviced or maintained.  (Pl. dep., 123:19-25,

27  124:1-25, 125:1-10, 127:8-24.)    Podium  assignments  and  request  for  repairs,  service  and

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303                                   6.

1   maintenance are made as needed for all the skycaps without regard to their race or age.  (Olson Dec.,

2   ¶¶ 4, 6  Javier Dec., ¶¶ 4, 7; Harris Dec., ¶¶ 3, 5.)

3        Indeed, Plaintiff's own testimony makes it clear that he has no evidence that any of

4   the actions about which he complains were motivated by unlawful discrimination.  Plaintiff admits

5   that he had no problems with any manager at American prior to imposition of the bag fee program

6   except with respect to his December 2001 discussions with Mr. Olson regarding hours and curb

7   assignments.  (Pl. dep., 72:20-25, 73:1-11.)  And he repeatedly admitted that no one—and in

8   particular no American manager or supervisor—ever made comments about his race or age whether

9   in connection with his hours, his curb assignment, the baggage fee program, his machine, servicing

10  his machine, or anything else.  (Pl. dep., 123:16-25, 124:1-25, 125:1-10 (machine assignment);

11  147:9-25, 148:1-3 (race); 149:6-18 (system wide bag fee program applies to all American skycaps,

12  all contract skycaps, the majority of whom are minorities and over 40); 154:20-25, 155:1-6 (no other

13  facts in support of age claim); 79:5-7 (G2 skycaps were given similar paperwork concerning job

14  changes at time bag fee instituted); 114:1-10 (admits that if his machine is temporarily down and he

15  were to use another machine, he would have to use a machine otherwise assigned to a G2 skycap on

16  duty);  129:20-25, 130:1-5, 134:4-14 (machine he uses is same as G2 skycaps use, G2 skycap

17  machines malfunction occasionally, same people repair both, everyone tries to get his machine to

18  work); 176:13-17, 184:11-24 (lack of evidence of discrimination by Mr. Olson or station managers.)

19       Plaintiff's retaliation claim is based entirely on his claim that, when he was informed

20  of his new schedule, etc., by Ron Olson in the December 2001 meeting, he told Mr. Olson that the

21  prior union contract at TWA was supposed to remain in place.  (Pl. dep., 38:6-25, 39:1-25.)  This of

22  course was not the case, as the old contract had no relevance to American skycaps who are not

23  unionized.  (Pl. dep., 35:4-13.) [4]

### V.
### LEGAL STANDARDS

24  **A.    Standards as to Motions for Summary Judgment.**

26       A motion for summary judgment is properly granted where "the pleadings,

27  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

[4] Plaintiff has not made any claims for breach of a collective bargaining agreement.

1   show that there is no genuine issue as to any material fact and that the moving party is entitled to a

2   judgment as a matter of law." Fed. R. Civ. P. 56(c. The Supreme Court clarified the standard for

3   summary judgment in three important cases. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 91

4   L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d

5   202, 106 S. Ct. 2505 (1986) *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574,

6   89 L. Ed. 2d 538, 106 S. Ct. 1433 (1986).

7           The moving party bears the initial burden of demonstrating the absence of a "genuine

8   issue for trial." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 256. A fact is material if it could

9   affect the outcome of the suit under the governing substantive law. *Id*. at 248. When the non-

10  moving party bears the burden of proving the claim or defense, the moving party can meet its burden

11  by pointing out the absence of evidence from the non-moving party. The moving party need not

12  disprove the other party's case. *See Celotex Corporation v. Catrett, supra*, 477 U.S. at 325.

13          When the moving party meets its burden, the adverse party may not rest upon the

14  mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by

15  "affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a

16  genuine issue for trial." Fed. R. Civ. P. Rule 56(e). Summary judgment will be entered against the

17  non-moving party if that party does not present such specific facts. *Id*. The non-moving party must

18  come forward with more than the "mere existence of a scintilla of evidence." *Anderson v. Liberty

19  Lobby, Inc., supra,* 477 U.S. at 252, 91 L. Ed. 2d at 214. As the Court explained in *Matsushita*:

20          When the moving party has carried its burden under Rule 56(c), its
            opponent must do more than simply show that there is some
21          metaphysical doubt as to the material facts.... Where the record taken
            as a whole could not lead a rational trier of fact to find for the non-
22          moving party, there is no 'genuine issue for trial.'

23          *Matsushita Elec. Ind. Co. v. Zenith Rancho, supra, 435 U.S. at* 455 U.S. at 586-87,

24  89 L. Ed. 2d at 552.

25          A Plaintiff's speculative testimony about the motive for an employer's employment

26  action is insufficient to create a triable issue of material fact.    (finding conclusory allegations

27  insufficient to defeat summary judgment motion). Rather, a Plaintiff must come forward with

28  specific admissible evidence demonstrating that an employment decision was made with an

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)          8.
FIRMWIDE:84803001.1 009001.1303

1  improper motive.  Reliance on mere speculation, conjecture, or fantasy cannot defeat a motion  for

2  summary judgment. *See, e.g., The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151-52 (9th

3  Cir. 1988) .  *Horn v. Cushman & Wakefield*, 72 Cal. App. 4th 798, 807 (1999) (""To avoid summary

4  judgment, [appellant] 'must do more than establish a prima facie case and deny the credibility of the

5  [defendant's] witnesses.' [Citation.] [He] must produce 'specific, substantial evidence of pretext.'

6  [Citation.]" (*Bradley v. Harcourt, Brace and Co.* (9th Cir. 1996) 104 F.3d 267, 270.) We emphasize

7  that an issue of fact can only be created by a conflict of evidence. It is not created by speculation or

8  conjecture. (See *Compton v. City of Santee* (1993) 12 Cal. App. 4th 591, 595-596 [15 Cal. Rptr. 2d

9  660].)"

10    Finally, a motion for judgment on the pleadings is appropriate and should be granted

11  when, even if all material allegations of the complaint are true, the moving party is entitled to

12  judgment as a matter of law.  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.* (9th Cir. 1989)

13  896 F.2d 1542, 1550.

14                              **VI.**
                           **ARGUMENT**

15    Plaintiff does not claim that his hourly rate of pay from American has been adversely

16  impacted, only that tips he receives from customers have been reduced because, *inter alia*, of his

17  hours and curb assignments.  As explained below, these were discrete acts which occurred far

18  outside the limitations period.  He also claims that his tips have been reduced because of the

19  company wide program charging passengers a per bag fee or if the podium he uses is inoperable for

20  some period of time.  But he lacks any evidence whatsoever that these are adverse actions taken

21  against him for unlawful reasons.

22  A.  **Plaintiff cannot prevail on his claim that his tip income was reduced as a result of his shift, schedule or curb side assignment because the statute of limitations bars such a claim.**

23

24    Plaintiff's First and Second claims are brought under the California Fair Employment

25  & Housing Act ("FEHA").  California Government Code Section 12940, subdivision (a) provides in

26  pertinent part that it is an unlawful employment practice for an "employer, because of the race . . .

27  [or] . . . age . . . of any person . . . to discriminate against the person in compensation or in terms,

28

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833-4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO.  C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

9.

1    conditions, or privileges of employment." The FEHA also provides that it is an "unlawful

2    employment practice" for "any employer . . . or person to . . . discriminate against any person

3    because the person has opposed any practices forbidden under this part or has filed a complaint,

4    testified, or assisted in any proceeding under this part." (Govt. C. § 12940, subd. (h); see Cal. Code

5    Regs., tit. 2, § 7287.8, subd. (a).) The FEHA requires a plaintiff to show that an adverse action was

6    taken against him, that is, an action that materially affected the employee's terms and conditions of

7    employment. *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal. App. 4th 1216,

8    1231-1233. Furthermore, in order to be actionable under the FEHA, the "adverse treatment must be

9    reasonably likely to impair a reasonable employee's job performance or prospects for advancement,

10   as distinguished from minor or relatively trivial actions that are likely to do more than displease. "In

11   other words, changes in terms and conditions of employment must be both *substantial and*

12   *detrimental* to be actionable." *Horsford v. Bd. of Trustees of Calif. State Univ.*, 132 Cal. App. 4th

13   359, 373 (2005) (emphasis added.)[5]

14           Claims under the FEHA are subject to an administrative statute of limitations

15   controlling the time within which a charge of discrimination must be filed. Government Code

16   section 12960, subdivision (d) provides, "No complaint may be filed after the expiration of one year

17   from the date upon which the alleged unlawful practice or refusal to cooperate occurred [with certain

18   exceptions not asserted in this case]." This imposes a mandatory time within which such charges

19   must be filed with the FEHA. "The timely filing of an administrative complaint, and exhaustion of

20   that remedy, is a prerequisite to maintenance of a civil action for damages under the FEHA."

21   *Balloon v. Superior Court* (1995) 39 Cal. App. 4th 1116, 1120. The statute of limitations begins to

22   run when a "discrete act" of discrimination occurs. Discrete acts that predate the limitations period

23   are not actionable. *See, e.g., National Railroad Passenger Corp. v. Morgan* (2002) 536 US 101, 110,

24   122 S.Ct. 2061, 2070–2071; *Porter v. California Dept. of Corrections* (9th Cir. 2004) 383 F. 3d

25   1018, 1027. Prior allegedly unlawful acts occurring outside the limitations which are not

26   accompanied by unlawful acts within the limitations period may not form the basis of a timely

27   _____

[5] Similarly, the anti-retaliation provisions of the FEHA are limited to such material adverse employment actions, a
standard which is more difficult for an employee to meet than under the standard adopted by the Ninth Circuit in Title

28   VII cases. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1051.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303                    10.

1    charge of discrimination merely because pay is affected into the future. *Ledbetter v. Goodyear Tire*

2    *& Rubber Co.*, 127 S.Ct. 2161, 100 FEP Cases 1025 (U.S. 2007) ("Because a pay-setting decision is

3    a "discrete act," it follows that the period for filing an EEOC charge begins when the act occurs."

4    *Id.*, at 100 FEP Cases 1026.)  The Supreme Court, in rejecting arguments to allow the limitations

5    period to begin anew each time plaintiff received pay allegedly impacted by prior unlawful acts

6    stated:

> Ledbetter's arguments here—that the paychecks that she received during the charging period and the 1998 raise denial each violated Title VII and triggered a new EEOC charging period—cannot be reconciled with Evans, Ricks, Lorance, and Morgan [citations omitted]. Ledbetter, as noted, makes no claim that intentionally discriminatory conduct occurred during the charging period or that discriminatory decisions that occurred prior to that period were not communicated to her. Instead, she argues simply that Goodyear's conduct during the charging period gave present effect to discriminatory conduct outside of that period. But current effects alone cannot breathe life into prior, uncharged discrimination; as we held in Evans, such effects in themselves have "no present legal consequences." 431 U.S., at 558. Ledbetter should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her. She did not do so, and the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming that prior failure.

17         A similar result obtains under controlling California law.  "Generally, a cause of

18    action accrues for purposes of the statute of limitations, and the applicable limitations period begins

19    to run, when the plaintiff has suffered damages from a wrongful act." (*Lyles v. State of California*

20    (2007) 153 Cal. App. 4th 281, 286.)  Once the damage is such that the cause of action accrues,

21    additional damage from the same wrong does not alter the accrual of the cause of action or otherwise

22    extend the limitations period. (*Id.* at 290 (inverse condemnation action); *see also Davies v. Krasna*

23    (1975) 14 Cal. 3d 502, 514 ("neither uncertainty as to the amount of damages nor difficulty in

24    proving damages tolls the period of limitations.")

25         Here, Plaintiff contends that his tips were reduced by his hours, shift, and curbside

26    location, all of which were made in 2001, all well outside the limitations period for the filing of an

27    administrative Charge of Discrimination.  The same is true as to his curb-side assignment which also

28    was made in December 2001.  This is also true with regard to his claim that he was told he could not

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

11.

move to another city. As is clear, his curb-side assignment, hours, shift and work city were all established in December 2001. Such events must be viewed as "discrete actions" which commenced the running of any relevant statue of limitations in December 2001. If those discrete acts reduced income and if they were motivated by unlawful discrimination, plaintiff was required to file his administrative Charge not later than December 2002. But Plaintiff did not file his administration charge of discrimination until January 24, 2006. Hence, all these actions occurred well outside the one-year limitations period within which he was required to file his administrative Charge and outside the two-year statute of limitations governing his claims for negligent and intentional infliction of emotional distress. There is therefore no triable issue but that these claims are barred by the applicable statutes of limitations.

**B.**    **Plaintiff cannot prevail on his claim that his tip income was reduced by unlawful discrimination because he has no evidence that any decisions affecting his employment were based on unlawful animus.**

Plaintiff's hourly wage has risen since after he commenced working at American and he makes no claim regarding this aspect of his pay. Instead, his claim is based solely on his alleged reduction in tip income which he alleges are the result of his hours, curb assignment, machine malfunctions, and the $2 per bag curbside check-in fee. His claim that his tips were reduced by his hours, shift, and curb assignment are barred by the statute of limitations, as noted above. But to the extent any portion of his claim is not barred by the statute of limitations, there is no triable issue as to whether any action taken by American was taken for unlawful reasons. This applies to all aspects of his claims, including his shifts and hours, his curbside assignment, his occasional machine malfunctions, and the system wide curbside check-in fee program.

As noted previously, plaintiff's speculation about the reasons for actions which affect him is insufficient to create a triable issue of material fact. *Lujan v. Nat'l Wildlife Fed.*, *supra*, 497 U.S. at 888; *The Jeanery, Inc v. James Jeans, Inc.*, *supra.*, 849 F.2d at 1151-52; *Horn v. Cushman & Wakefield, supra*, 72 Cal. App. 4th at 807; *Bradley v. Harcourt, Brace and Co.*, *supra*, 104 F.3d at 270; *Compton v. City of Santee, supra*) 12 Cal. App. 4th at 595-596.

Plaintiff all but admits that he has no evidence of discrimination based on race. When he was asked what evidence exists supporting such a claim, he only replied that bartenders working

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

12.

1    in premium passenger lounges did "not have tips taken away." (Pl. dep., 146:16-25, 147:1-25,

2    148:1-3.) But this is not a relevant comparison for obvious reasons—skycaps did not in fact have

3    their tips "taken away", as he admits when he concedes that he continues to receive and ask for tips.

4    Secondly, he presents no evidence that skycaps and bartenders are "similarly situated," i.e., that they

5    have "similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F. 3d 634,

6    641. Bartenders do not work outside, do not check passengers, and do not work as part of a team to

7    get bags on aircraft. Bartenders do sell drinks in premium passenger clubs though, something which

8    provides a potential revenue source to American. In any event, if plaintiff wishes to use hearsay

9    circumstantial evidence to support his claims, he "must put forward specific and substantial evidence

10   challenging the credibility of the employer's motives." *Id.*, at 642. This he does not do. His claim

11   of race discrimination therefore amounts to nothing more than speculation that race played a factor

12   in any act about which he complains. As noted above, speculation cannot avoid summary judgment.

13            As to Plaintiff's age claim, the only "evidence" which Plaintiff points to is that when

14   the bag fee was instituted, he and all American skycaps were informed that the skycap position

15   would henceforth have additional duties and that, as a result, the skycaps "have the option to elect

16   layoff [and would] "be eligible for regular severance pay." (Pl. dep., Ex. 2.) But that option was for

17   the skycap to chose—not American—and plaintiff chose to continue to work. Furthermore, plaintiff

18   concedes that all of the former TWA skycaps hired when he was hired were actually *older* than he

19   was and that "most" of the G-2 skycaps are over the age of forty. (Pl. dep., 46:23-25, 47: 1-4.)

20   Evidence that the majority of others performing duties similar to plaintiff are also in the protected

21   category of over 40 militates against his claim of age discrimination. *See, e.g., Connecticut v. Teal*,

22   457 U.S. 440, 454 (1982). In any event, plaintiff's claim that action was taken against him was

23   motivated by age discrimination is nothing more than mere speculation and speculation will not

24   survive a summary judgment motion.

25   **C.    Plaintiff cannot prevail on his claim of retaliation.**

26            Although plaintiff's complaint alleges that "defendant took actions alleged in this

27   matter to retaliate against Plaintiff who spoke up for himself and others" (Complaint, ¶ 12), he does

28   not allege that he engaged in any conduct protected under the FEHA. Instead, this claim is based on

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303                    13.

1   his 2001 remarks to Mr. Olson in which he claimed that the rights TWA skycaps had under the

2   TWA collective bargaining agreement continued in effect at American. (Pl. dep., 72:24-25, 73:1-4.)

3   But his claims about collective bargaining agreement rights cannot be the subject of a claim under

4   the FEHA because it does not constitute opposition to a practice forbidden by the FEHA, and did not

5   involve plaintiff having filed a complaint, testified, or assisted in any proceeding under the FEHA.

6   (Cal. Govt. C. § 12940, subd. (h).)  *See, e.g., EEOC v. Crown Zellerbach Corp.,* 720 F. 2d 1008,

7   1013 (9th Cir. 1983) (An act of "opposition" must refer to some particular practice by an employee

8   that is unlawful under TitleVII.)  Because Plaintiff has not alleged any such opposition, any claim

9   for retaliation for opposing unlawful practices must fail.[6]  Accordingly, this claim must also fail.

10  **D.    Plaintiff cannot prevail on his claim for negligent infliction of emotional distress as his

11  claim fails to state a claim on which relief can be granted and would in any event be
      barred by the statute of limitations.**

12          Plaintiff's Third Claim for Relief is styled as a claim for negligent infliction of

13  emotional distress.  The facts upon which this claim are predicated are the *intentional acts* of alleged

14  discrimination and retaliation about which plaintiff complains earlier in his complaint and which are

15  incorporated by reference into this claim.  (Complaint, ¶ 14-15.)  However, courts have unanimously

16  rejected claims for *negligent* infliction of emotional distress predicated on *intentional acts*

17  committed by employers and their supervisors.  (See, e.g., *Semore v. Pool,* 217 Cal. App. 3d 1087,

18  1105 (1990) "It is clear ... that there was no duty not to discharge defendants and that any actions by

19  the employer were intentional, not negligent. An employer's supervisory conduct is inherently

20  '*intentional*'." (emphasis added; internal quotes omitted); see also *Edwards v. United States Fid. &

21  Guar. Co.* 848 F. Supp. 1460, 1466 (ND CA 1994)  (applying California law)—"where the conduct

22  is intentional, it cannot be used as the basis for a negligent infliction of emotional distress claim.")

23  Even if a claim for negligent infliction of emotional distress exists in connection with employment

24  actions, the exclusive remedy for injuries caused by an employer's negligence is workers'

25  compensation. *See Fermino v. Fedco, Inc.* (1994) 7 C. 4th 701, 713–714; *Charles J. Vacanti, M.D.,

26  Inc. v. State Comp. Ins. Fund* (2001) 24 C. 4th 800, 812–813.

27

28  _____

[6] Plaintiff makes no claim of retaliation for participating in any process prohibited under the FEHA.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916 561 5300

1    In addition, the statute of limitations for bringing an action for negligent infliction of

2  emotional distress is two years.  Cal. Code Civ. Proc. § 335.1.

3    As noted, plaintiff's claim for negligent infliction of emotional distress is factually in

4  conflict with the allegations of the third claim for relief that American's conduct was *intentional.*  If

5  such actions were however, negligent, they would be preempted by plaintiff's remedies under the

6  workers' compensation act and there can be no civil recovery.  Furthermore, and to the extent that

7  any of the actions about which he complains other than the bag fee program, any such action would

8  be barred by the two-year statute of limitations which commenced to run at the time of the alleged

9  unlawful acts concerning his hours, shift and curbside assignment.

10  **E.    Plaintiff's cannot prevail on his claim for intentional infliction of emotional distress as**
     **there is no triable issue  of fact material to the disposition of his claim.**

11

12    Although relevant case law holds that acts of unlawful discrimination and harassment

13  may support a claim for *intentional* infliction of emotional distress, *see, e.g., Murray v. Oceanside*

14  *Unified School Dist.*,  79 Cal App 4th 1338, 1363 (emotional distress claim "is not barred where the

15  distress is engendered by an employer's illegal discriminatory practices"), such a claim fails if the

16  claim for unlawful discrimination fails.    A simple claim personnel management activity is

17  insufficient to support a claim for intentional infliction of emotional distress, even if improper

18  motivation is alleged: "Managing personnel is not outrageous conduct beyond the bounds of human

19  decency, but rather conduct essential to the welfare and prosperity of society....If personnel

20  management decisions are improperly motivated, the remedy is a suit against the employer for

21  discrimination." *Janken v. GM Hughes Electronics*, 46 Cal App 4th 55, 80 (1996).  This claim

22  therefore adds nothing to Plaintiff's claims for discrimination and fails if plaintiff's claims for

23  discrimination are barred.

24    As noted already, if the factual predicate of an intentional infliction of emotional

25  distress claim is unlawful discrimination, plaintiff must show that there is a triable issue of fact that

26  unlawful discrimination occurred and that he initiated his action within the controlling statutes of

27  limitations.  In fact, he did neither as show hereinabove.  For these reasons, there is likewise no

28  triable issue of fact as to this claim.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Ventura Oaks Way
Suite 390
Sacramento, CA  95833 4227
916 564 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO.  C 05-04292 SI)                    15.
FIRMWIDE:84803001.1 009001.1303

1       Finally, the statute of limitations for bringing an action for intentional infliction of

2   emotional distress is two years. Cal. Code Civ. Proc., § 335.1.

3

4   **VII.**<br>**CONCLUSION**

5       As shown herein, there is no triable issue as to plaintiff's claims that his hours, shift,

6   and curb side assignment are barred by his failure to comply with the statutes of limitations

7   controlling his claims. Furthermore, there is no triable issue in any event that any of the acts about

8   which he complains were the results of unlawful discrimination based on race or age, or were in

9   retaliation for his participation in acts protected under the FEHA or for his opposition to practices

10  prohibited by the FEHA. In addition, his claim for negligent infliction of emotional distress are

11  barred because it fails to state a claim upon which relief can be granted and is also barred by the

12  statute of limitations controlling such claim. Finally, it is clear that there is no triable issue of fact

13  with regard to his fourth claim for relief for intentional infliction of emotional distress because he

14  lacks any evidence or unlawful discrimination and that this claim is also barred by the statute of

15  limitations as to his hours, shift, and assignments.

16      For these reasons, Defendant's motion should be granted in its entirety.

17

18  Dated: April 24, 2008                              Respectfully submitted,

19

20                                     /s/Kenneth R. O'Brien

                                   KENNETH R. O'BRIEN

21                                     LITTLER MENDELSON

22                                     A Professional Corporation

                                   Attorneys for Defendant

23                                     AMERICAN AIRLINES, INC.

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 350
Sacramento, CA 95833 4227
916 561 5300

NOTICE OF MOTION AND MPA ISO MOTION FOR
SUMMARY JUDGMENT (NO. C 05-04292 SI)
FIRMWIDE:84803001.1 009001.1303

16.