1  KENNETH R. O'BRIEN, Bar No. 072128
   E-mail: kobrien@littler.com
2  LITTLER MENDELSON
   A Professional Corporation
3  2520 Venture Oaks Way, Suite 390
   Sacramento, CA  95833.4227
4  Telephone:   916.830.7200
   Facsimile:    916.561.0828
5
   DENISE M. VISCONTI, Bar No. 214168
6  E-mail: dvisconti@littler.com
   LITTLER MENDELSON
7  A Professional Corporation
   501 W. Broadway, Suite 900
8  San Diego, CA  92101.3577
   Telephone:   619.232.0441
9  Facsimile:    619.232.4302

10 Attorneys for Defendant
   AMERICAN AIRLINES, INC.
11

12                UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15 | EDWARD E. ANDERSON,               | Case No. 07-cv-3527 WHA
16 |       Plaintiff,                  | DECLARATION OF RON OLSON IN
   |                                   | SUPPORT OF DEFENDANT'S MOTION
17 |       v.                          | FOR SUMMARY JUDGMENT AND/OR
   |                                   | SUMMARY ADJUDICATION OF CLAIMS
18 | AMR The parent of AMERICAN        | AND/OR JUDGMENT ON THE
   | AIRLINES INC., AMERICAN AIRLINES, | PLEADINGS
19 | and DOES 1 through 5 INCLUSIVE,   |
   |                                   | Date:      May 29, 2008
20 |       Defendants.                 | Time:      8:00 a.m.
   |                                   | Courtroom: 9
21

22      I, RON OLSON, hereby declare:

23      1.   I am employed by American Airlines, Inc. (hereinafter "American") as General

24 Manager at its Las Vegas Airport in Las Vegas, Nevada, a position I have held since March 2007.

25 Prior to that time, I was employed by American as Ramp Services Manager at San Francisco

26 International Airport in San Francisco, California ("SFO"), from January 2006 through March 2007

27 and Passenger Services Manager from July 2001 through January 2006. I have personal knowledge

28 ///

1  of the information hereafter set forth. If called and sworn as a witness, I could and would
2  competently testify thereto.

3  2. In my capacity as Passenger Services Manager at SFO, I generally was in charge of
4  all of American's passenger services, including its curbside baggage handling operations. However,
5  I mostly left the day-to-day details and activities of the curbside operations to the Customer Service
6  Manager, who was Jocelyn Javier between 2001 and the time I left my position as Passenger
7  Services Manager in 2006.

8  3. In 2001, Mr. Ed Anderson joined American at SFO as a skycap after American
9  acquired TWA Airlines. At that time, Mr. Anderson began working at American's curbside
10  checking bags in for passengers who were departing from SFO. I recall Mr. Anderson worked at the
11  west end of American's curb from 8:00 to 12:00, five days a week, which was his schedule from
12  2001 until I left SFO.

13  4. Mr. Anderson and the other American skycaps were assigned their own podium
14  which he used to create baggage tags for customers' luggage. American skycaps were required to
15  use their own machine so that the baggage tags they processed each shift easily could be accounted
16  for. Because there were more G2 skycaps than American skycaps, G2 was assigned a larger number
17  of podiums. Podiums were not assigned to any particular skycap, including Mr. Anderson, due to
18  the race or age of the skycap. All of the skycaps used a similar podium. Occasionally, these
19  machines would go down, including Mr. Anderson's, and require maintenance or repair. Whenever
20  a machine required repair, either Ms. Javier or I would contact the company we had contracted with
21  to perform repairs. When it was brought to my attention that Mr. Anderson's machine went down, I
22  made every effort to ensure it was fixed as quickly as possible. The same procedure was followed
23  whenever any of the podiums experienced problems or malfunctions. Service calls and repairs were
24  never made or withheld on the basis of the race or age of the skycap involved.

25  5. In approximately August 2005, all skycaps were required to comply with a new
26  policy which required them to collect a $2.00 per bag fee for curbside check-in. Skycaps also were
27  required to maintain complete documentation of bags checked, reconcile cash collections, and turn
28  in all paperwork and amounts collected for checked baggage. Skycaps were free to and did solicit

1  and receive tips. The new curbside check-in charge was imposed system-wide and was not limited
2  to the skycaps at SFO or to Mr. Anderson. At the time the new program was implemented, if an
3  existing skycap did not want to take on the new job responsibilities, he or she could decline to do so,
4  elect layoff, and receive severance pay. Each skycap was so informed, including Mr. Anderson, who
5  took the option of taking on the additional responsibilities and continued to work.

6.    I never scheduled Mr. Anderson to work particular hours or assigned him to work at a particular location, or treated him differently than any other employee of American, based upon his race or his age or based upon any complaint he may have made to someone at American.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 23 day of April, 2008 at Las Vegas, Nevada.

*/s/ Ron Olson*
Ron Olson