1  KENNETH R. O'BRIEN, Bar No. 072128
   E-mail: kobrien@littler.com
2  LITTLER MENDELSON
   A Professional Corporation
3  2520 Venture Oaks Way, Suite 390
   Sacramento, CA  95833.4227
4  Telephone:   916.830.7200
   Facsimile:    916.561.0828
5
   Attorneys for Defendant
6  AMERICAN AIRLINES, INC.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11 | EDWARD E. ANDERSON,              | Case No.  07-cv-3527 WHA
12 |           Plaintiff,             | DEFENDANT AMERICAN AIRLINES, INC.'S *SUPPLEMENTAL* REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION OF CLAIMS AND OR JUDGMENT ON THE PLEADINGS
13 | v.                               |
14 | AMR The parent of AMERICAN AIRLINES INC, AMERICAN AIRLINES, and DOES 1 through 5 INCLUSIVE, |
15 |
16 |           Defendants.            |
17 |                                  | Date:  June 5, 2008
                                        Time:  8:00 a.m.
18                                      Ctrm:  9
                                        Judge: William Alsup

REPLY MPA ISO MOTION FOR SUMMARY JUDGMENT
FIRMWIDE:85307322.1 009001.1303                                          07-cv-3527 WHA

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

III. ARGUMENT ....................................................................................................................... 6

    A. Plaintiff cannot prevail on his claim that his tip income was reduced as a result of his shift, schedule or curb side assignment because the statute of limitations bars such a claim ............................................................................................. 7

    B. Plaintiff cannot prevail on his claim that his tip income was reduced by unlawful discrimination because he has no evidence that any decisions affecting his employment were based on unlawful animus ......................................... 9

    C. Plaintiff cannot prevail on his claim of retaliation ....................................................... 11

    D. Plaintiff cannot prevail on his claim for negligent infliction of emotional distress as his claim fails to state a claim on which relief can be granted and would in any event be barred by the statute of limitations ........................................ 12

    E. Plaintiff cannot prevail on his claim for intentional infliction of emotional distress as there is no triable issue of fact material to the disposition of his claim ............................................................................................................................ 12

IV. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

PAGE

## CASES

Balloon v. Superior Court
 (1995) 39 Cal. App. 4th 1116 ........................................................................................... 7

Bradley v. Harcourt, Brace and Co.
 (9th Cir. 1996) 104 F.3d 267 ....................................................................................... 9, 11

Celotex Corp. v. Catrett
 (1986) 477 U.S. 317 .......................................................................................................... 9

Edwards v. United States Fid. & Guar. Co.
 (N.D. Cal. 1994) 848 F. Supp. 1460 ............................................................................... 12

Federal Ins. Co. v. Burlington Northern & Santa Fe Ry. Co.
 (C.D. Cal. 2003) 270 F.Supp.2d 1183 .............................................................................. 9

Fermino v. Fedco, Inc.
 (1994) 7 Cal. 4th 701 ...................................................................................................... 12

Horn v. Cushman & Wakefield
 (1999) 72 Cal. App. 4th 798 ........................................................................................ 9, 11

Janken v. GM Hughes Electronics
 (1996) 46 Cal. App. 4th 55 ............................................................................................. 12

Ledbetter v. Goodyear Tire & Rubber Co.
 (2007) 127 S. Ct. 2161 .................................................................................................. 7, 8

National Railroad Passenger Corp. v. Morgan
 (2002) 536 U.S. 101 .......................................................................................................... 7

Porter v. California Department of Corrections
 (9th Cir. 2004) 383 F. 3d 1018 ......................................................................................... 7

The Jeanery, Inc. v. James Jeans, Inc.
 (9th Cir. 1988) 849 F.2d 1148 ..................................................................................... 9, 11

## STATUTES

Cal. Code. Civ. Proc. § 335.1 .................................................................................................. 12

Fed. R. Civ. P. Rule
 56(e)(2) ............................................................................................................................. 9

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

(NO. )                                   ii.

## I.
## INTRODUCTION

Plaintiff, despite numerous late filed papers in opposition to the instant motion, has failed to show that any issue material to either his claims or defenses thereto remains to be tried. On May 15, 2008, Plaintiff filed an untimely opposition to Defendant's motion. (Doc. # 37.) This pleading was 12 pages in length and was not accompanied by any exhibits or other materials appended thereto. However, on the same date, Plaintiff filed his own Declaration in opposition to Defendant's motion running three pages in length and without any exhibits or other materials appended thereto. (Doc. # 38.)

On May 20, 2008, Plaintiff's counsel faxed a document which purports to be an *amended* opposition to American's motion. As of this time, this pleading does not appear to have been electronically filed with the court, but does bear a stamp of the clerk of this court representing that it was filed the day before—May 19, 2008. In addition, Plaintiff's counsel filed a declaration on May 19, 2008 attaching thereto approximately 42 pages of unmarked deposition testimony and other unauthenticated and other objectionable materials. This *new* declaration by counsel, all of its attachments, and the *amended* opposition to American's motion was faxed to the undersigned on May 20, 2008. The undersigned requests the Court to strike these new pleadings as improperly and untimely filed. But even if they are not, and for the reasons discussed below, it is clear that he has failed to present any admissible evidence which could demonstrate that an issue material to the disposition of his claims or defenses thereto remains to be tried. Accordingly, for the reasons discussed below, the motion should be granted in its entirety.

## II.
## STATEMENT OF FACTS

Despite his multiple late filings in connection with the instant motion, and even though Plaintiff did not even serve defense counsel with *any evidence* in opposition to the motion until Tuesday of this week, Plaintiff has failed to adduce any evidence, admissible or otherwise[1],

---

[1] Defendant is simultaneously filing evidentiary objections to portions of the evidence presented by Plaintiff.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

REPLY MPA ISO MOTION FOR SUMMARY JUDGMENT
FIRMWIDE:85307322.1 009001.1303

07-cv-3527 WHA

1  which demonstrates that any issue material to either the disposition of his claims or defenses thereto
2  remain to be tried.

3      Plaintiff in fact ignores nearly all of the facts recited in American's moving papers.
4  As noted, Plaintiff served his Complaint only on American and on no other defendant. (O'Brien
5  Dec., ¶ 6. ) He ignores that named defendant AMR has no employees and Plaintiff only worked for
6  American Airlines. (Declaration of Diane Dildy in Support of Defendant American Airlines, Inc.'s
7  Notice to Federal Court of Removal of Civil Action from State Court, filed July 7, 2007, District
8  Court Doc. 2, ¶¶ 7, 8.)

9      Plaintiff concedes as he must, that he previously worked as a Skycap at SFO
10 International Airport for Trans World Airlines ("TWA") and that, before he went to work for
11 American, American had no employee-skycaps at SFO, and that American used a contract
12 company—Globe (now known as G2)—which in turn hired employees who performed skycap duties
13 (Pl. dep., 47:7-25.) He ignores that skycaps posted at American's SFO curbside location work two
14 separate, fixed, belts which bring luggage from the curbside into the terminal (Pl. dep., 100:3-20),
15 and that automotive traffic at SFO approaches these belts moving from east to west, dropping off
16 passengers and luggage at computer podiums used by the skycaps to check perform check-in and
17 other services. (Pl. dep., 67:25, 68:1-6.) He skips over the fact that, at the time plaintiff joined
18 American, and up through the present day, G2 skycaps begin their workday as early as 3:30 or 4:30
19 a.m. (Pl. dep., 51:21-22, 118:6-20), and that these skycaps work the belt closest to the arriving
20 traffic set up their podiums there (Pl. dep., 118:6-20), and that he, whose shift begins several hours
21 later, always worked the west end of the curb working the other belt. (Pl. dep., 57:4-23.)

22     Plaintiff admits that American acquired the assets of TWA out of bankruptcy and all
23 of the TWA skycaps were offered and accepted employment with American at SFO. Although he
24 speaks about the fact that he is now over the age of 70, he ignores that American hired him, and all
25 of the TWA skycaps were African American, and that he was 68 when hired, the youngest of the
26 former TWA skycaps and the one with the least seniority. Over time, the other TWA skycaps who
27 were hired by American have retired and plaintiff is the only remaining skycap employed by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303          2.          07-cv-3527 WHA

American at SFO (Pl. dep., 42:13-25, 45:4-6, 66:18-23.)[2] He concedes that the overall number of skycaps working at G2—which has always provided the majority of skycap services at SFO for American servicing American's passengers have also gone down over the years (Pl. dep., 91:18-21; 98:16.)

Plaintiff's opposition mainly ignores entirely his admissions made at his deposition in an effort to defeat American's motion. It is undisputed that when the TWA skycaps were hired by American, a group meeting took place in December 2001 between American's supervisor Ron Olson and the new American (former TWA) skycaps. (Pl. dep., 37:19-25, 38:1-25, 39:1-25.) Plaintiff claims that at that December 2001 meeting, Mr. Olson informed plaintiff that he would have a four hour shift (Pl. dep., 37:19-25, 38:6-14, 39:7-15), told him what his hours would be (Pl. dep., 49:13-19), told him where his curbside location would be, and told him that the TWA skycaps would not be able to transfer. (Pl. dep., 69:8-19.) About three weeks after this meeting, Mr. Olson and plaintiff agreed that his hours would be from 8:00 a.m. to noon. (Pl. dep., 53:13-22, 140:24-25, 141:1-25, 143:1-25, 144:1-12.) This shift has been in place for plaintiff the entire time he has worked for American. (Pl. dep., 44:10-15.) After it was established that he would start working at 8:00 a.m., plaintiff has not asked to start at any other earlier time. (Pl. dep., 143:15-25, 144:1-12.) With respect to his work hours, plaintiff testified that he "could see" that Mr. Olson "was right" that there were already enough skycaps working the east end of the curb who started early. (Pl. dep., 143:20-25, 144:1-12.) Accordingly, plaintiff cannot now deny that it was in 2001 when he suggested, and that Mr. Olson agreed, that plaintiff would begin his shift at 8:00 a.m. at the west end of the curb and work until noon. (Pl. dep., 143:20-25, 144:1-12.)

Thus, as to his claim that he was given less desirable hours and shift times, plaintiff's own testimony is that his schedule was set when he came to work for American in December 2001. (Pl. dep., 21:25, 22:1-15, 44:8-15, 49:13-19, 141:17-25, 142:1-24). And as to his claim concerning his location assignment, Plaintiff also testified that his west curbside location assignment was made

---

[2] Plaintiff does not deny that it is *attrition through the retirement of others* which has left him as the only American skycap working at SFO. He argues that the other skycap employer—G2—has not hired African Americans, but that does not create a triable issue as to him claim against American and is irrelevant. If plaintiff had applied for work at G2 (he has not), then he could bring an action for discrimination against it. In any event, this blanket assertion is not supported by any of the evidence he has adduced in opposition to the motion.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.561.5300

FIRMWIDE:85307322.1 009001.1303         3.                    07-cv-3527 WHA

in December 2001. (Pl. dep., 55:9-25, 56:1-5, 56:15-16, 57:4-6, 65:20-25.) Thus, contrary to the allegations of Paragraph 5 of his Complaint, and contrary to the arguments he makes in his opposition to the instant motion, it is clear that plaintiff's hours, shifts, and curb side location had nothing whatsoever to do with the implementation of the curb side bag check fee in 2005.

Plaintiff simply ignores that American skycaps are instructed to use a specific podium to easily allow American to keep track of the baggage tag process on a daily basis. (Olson Dec. ¶ 4; Javier Dec. ¶ 4; Harris Dec. ¶ 3.) He does not deny that American skycaps and G2 skycaps use the same kind of podium (Pl. dep., 129:20-25, 130:1-5), or that because G2 supplies the vast majority of skycap service at SFO, they are assigned most of the podiums. He does not address at all the fact that all of the podiums have problems on occasion and require service, maintenance, or repair, and that the same company and individuals service the podiums of all of the SFO skycaps. (Pl. dep., 129:20-25; 130:1-5; Olson Dec., ¶ 4,; Javier Dec., ¶ 4,; Harris Dec., ¶ 3.) And he has adduced no evidence whatsoever that curbside and podium assignments and repair and maintenance orders are never made or based on the race or age of the skycap whose podium is involved, instead just relying on conjecture and suspicions. (Olson Dec., ¶ 4, 6; Javier Dec., ¶ 4, 7; Harris Dec., ¶ 3, 5.)

Plaintiff concedes that when the company changed its practice and imposed a $2 per bag fee on checked luggage, that it applied to all personnel—AA skycaps and G2 personnel—who provide skycap services. He does not deny that the new practice required all skycaps to track and account for all such monies collected and that all skycaps must keep and reconcile records and fees collected, and turn in paperwork documenting their baggage transactions. He admits that, because these were new duties and responsibilities to be performed by the skycaps, American's skycaps were informed in writing that, if they wished, they could elect layoff in lieu of taking on the additional responsibilities, and obtain severance pay, something which plaintiff did not elect to do. (Pl. dep., 161:3-25, 162:1-11, Ex. 3 to Roesti Declaration in opposition to American's motion[3]; Olson Dec., ¶ 5.) He ignores that he and the G2 skycaps continue to solicit and receive tips.[4]

---

[3] The moving papers incorrectly referred to Exhibit 2 to plaintiff's deposition when it should have been to Exhibit 3 thereto. The Roesti declaration attaches the correct document to it as Exhibit 3 thereto.

[4] Defendant submits that this suit always has been about the imposition of the bag charge, and its belief was only supported by Plaintiff's failed effort to amend his complaint. Despite what he and his counsel feel about the bag charge,

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303          4.          07-cv-3527 WHA

Although he also complains that, from time-to-time, the podium to which he is assigned has temporary problems which cause it to be out of service, he completely ignores the fact that his own records make it clear that such problems occurred on only 18 days out of approximately 640 estimated work days since the bag charge was instituted.

Plaintiff admits that G-2 skycaps use podiums similar to his and further admits that machines used by the G-2 skycaps also occasionally break. (Pl. dep., 129:20-25, 130:1-5.) Plaintiff also admits that the same contract employees who fix the G-2 machines fix his when there is a problem. (Pl. dep., 129:20-25, 130:1-5.) He also admits that all of his supervisors and the individuals who fix his machine appear genuinely desirous of getting the machine up and running and that none of them have made any comments or remarks suggesting that his race or age motivates their actions, including how his podium was assigned, serviced or maintained. (Pl. dep., 123:19-25, 124:1-25, 125:1-10, 127:8-24.) Podium assignments and request for repairs, service and maintenance are made as needed for all the skycaps without regard to their race or age. (Olson Dec., ¶¶ 4, 6 Javier Dec., ¶¶ 4, 7; Harris Dec., ¶¶ 3, 5.) He is left only with complaining that he is assigned a particular podium to use (as the sole American employee skycap) but ignores entirely the reason for this: so American can track the work, baggage, and productivity of its employees. (Javier Dec. ¶ 4; Olson Dec. ¶ 4.)[5] If it is theoretically possible that a G2 skycap could log onto a machine to which they are not assigned, that does not controvert that assigning plaintiff to use the machine is for the legitimate business purpose of tracking the bags *he* checks without regard to any unlawful animus.

Plaintiff also totally ignores his own testimony that he has no evidence that any of the actions about which he complains were motivated by unlawful discrimination. He admits that he has had no problems with any manager at American prior to imposition of the bag fee program except with respect to his December 2001 discussions with Mr. Olson regarding hours and curb

---

they simply lack any evidence showing a triable issue of fact material to the disposition of claims for race or age discrimination exist.

[5] Thus, and contrary to the assertion in Plaintiff's Opposition, American has stated the business reason for the action about which he complains. (Pl. Opp., 9:18-20.) The remaining aspects of Plaintiff's case fail because of American's affirmative defense that claims based on the remaining portions of his complaints, e.g., hours, are barred as a matter of law and there is no triable issue with respect thereto.

assignments. (Pl. dep., 72:20-25, 73:1-11.) And he repeatedly admitted that no one—and in particular no American manager or supervisor—ever made comments about his race or age whether in connection with his hours, his curb assignment, the baggage fee program, his machine, servicing his machine, or anything else. (Pl. dep., 123:16-25, 124:1-25, 125:1-10 (machine assignment); 147:9-25, 148:1-3 (race); 149:6-18 (system wide bag fee program applies to all American skycaps, all contract skycaps, the majority of whom are minorities and over 40); 154:20-25, 155:1-6 (no other facts in support of age claim); 79:5-7 (G2 skycaps were given similar paperwork concerning job changes at time bag fee instituted); 114:1-10 (admits that if his machine is temporarily down and he were to use another machine, he would have to use a machine otherwise assigned to a G2 skycap on duty); 129:20-25, 130:1-5, 134:4-14 (machine he uses is same as G2 skycaps use, G2 skycap machines malfunction occasionally, same people repair both, everyone tries to get his machine to work); 176:13-17, 184:11-24 (lack of evidence of discrimination by Mr. Olson or station managers.)

Finally, Plaintiff's retaliation claim as asserted in his complaint and at his deposition, is based entirely on his claim that, when he was informed of his new schedule, etc., by Ron Olson in the December 2001 meeting, he told Mr. Olson that the prior union contract at TWA was supposed to remain in place. (Pl. dep., 38:6-25, 39:1-25.) This of course was not the case, as the old contract had no relevance to American skycaps who are not unionized. (Pl. dep., 35:4-13.)[6]

### III.
### ARGUMENT

Despite his multiple late filings in opposition to American's motion, Plaintiff has failed to show that there is any issue of fact material to the disposition of his claims or defenses thereto which remains to be tried. As set forth below, none of his late filed "evidence" or his legal

---

[6] Plaintiff's opposition claims that he was treated like a "pariah" after imposition of the bag fee is entirely unsupported by evidence of new acts within the limitations period taken with respect to his employment. Rather, his own opposition to the pending motion makes it clear that the "pariah" claim is based on things which he claims took place in 2001: he refers exclusively to the number of hours he was assigned to work and his hours. (Pl. Opp. 5:18-22) If plaintiff contends he was retaliated against because he protested against imposition of the bag fee, and if that is actionable, he should have brought a timely action for such. However, as noted in American's moving papers, Plaintiff has adduced no evidence that he was retaliated against for conduct under either the FEHA's participation or opposition clauses. (Defendant's Motion, 14:3-9.)

arguments shows that a conflict exists in the evidence which is conclusive as to the disposition of his claims.

A. **Plaintiff cannot prevail on his claim that his tip income was reduced as a result of his shift, schedule or curb side assignment because the statute of limitations bars such a claim.**

As noted in American's moving papers, plaintiff contends that certain actions were taken against him which affected his income. Specifically, he claims that his income was adversely affected by his assigned shift, number of work hours and curbside location. As demonstrated in American's moving papers, however, each of these were discrete actions which, according to plaintiff, adversely affected the terms and conditions of his employment. As such, and if they occurred more than one year prior to the time when Plaintiff filed his administrative charge of discrimination—January 25, 2006 (Complaint, ¶ 9; O'Brien Dec. filed in support of motion, ¶ 7)—they are time barred. His claim that those past acts have continued to reduce his tip income into the present, does not resurrect these time-barred claims. *Balloon v. Superior Court* (1995) 39 Cal. App. 4th 1116, 1120; *National Railroad Passenger Corp. v. Morgan* (2002) 536 U.S. 101, 110; *Porter v. California Department of Corrections* (9th Cir. 2004) 383 F. 3d 1018, 1027; *Ledbetter v. Goodyear Tire & Rubber Co.*, (2007) 127 S. Ct. 2161, 100 FEP Cases 1025 ("current effect alone cannot breathe life into prior, uncharged discrimination.").

Plaintiff ignores all of the foregoing decisions with the exception of *Porter*. However, *Porter* is entirely unhelpful to Plaintiff, because *Porter* explicitly recognized and restates that general rule set forth in *Morgan* that "any claim that Porter sought to assert for a discrete discriminatory act that occurred [outside the limitations period] was not actionable." *Porter, supra,* 383 F.3d at 1024. The Court of Appeals in *Porter* found that the district court *properly* dismissed the plaintiff's claims that were predicated on discrete acts occurring outside the limitations period but also determined that one such discrete action—the cancellation of an already approved transfer—had taken place within the limitations period. *Id.* Thus, because the discrete acts about which he complains—shift assignment, hours of work, and curb location all occurred in 2001, any claim based on such acts are time barred. His argument that those discrete untimely acts somehow become actionable merely because they have a continuing effect on

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303      7.      07-cv-3527 WHA

his tips into the limitations period is exactly the kind of argument rejected in *Morgan* and *Ledbetter* ("Current effects alone cannot breathe life into prior, uncharged discrimination.")

Turning then to each such act, it is clear that there is no dispute that Plaintiff claims he was told in December 2001 that he would work a part-time schedule of five four-hour days (Pl. dep. 39:8-10 ("Well, I do remember, because I told him they came around and have my shifts and told me there was going to be a four-hour shift"); Pl. dep. 39:23-25 ("He said—but he still did not give me the added hours that I was supposed to be under, the same as TWA").)[7] It is also clear that Plaintiff claims that he and Mr. Olson came to agree on the actual hours the shift would cover—the very hours which Plaintiff suggested to him (Pl. dep., 53:16-19 ("I said okay, 8:00. And he said fine. He said you'll work from 8:00 to 4:00....That's what I've been on ever since then..."). Even Plaintiff's own Declaration in Opposition to the motion (Doc. # 38) says the same in Paragraphs 4 and 5 in which he claims he was given a four hour shift in December 2001.[8] The same is true as to the fact that it was in 2001 that Plaintiff was assigned to work at the west end of the curb at the American terminal. (Pl. dep., 55:21-25) (When he started at American in 2001, "I had a location. It was at the west end of the airport."); Pl. dep. 56:1-16 (contract skycaps were at east end and he and others were at west end of curb.); Pl. dep. 57:4-5 (he was "on the west end of the curb when [he] started for American.") Thus, the

---

[7] Plaintiff's opposition to the instant motion makes claims that American, although it only purchased the assets of TWA while it was in bankruptcy (Pl. dep., 25:13-16 and Ex. 2 thereto; Olson Dec. ¶3; Javier Dec.¶ 3), was obligated to adhere to the terms of a collective bargaining agreement entered into with Plaintiff's former union, even though no American skycaps were represented by a union (Pl. dep., 35:4-13.) *See, e.g.,* Plaintiff's Amended opposition at 4:6-14.) Such claims are not only factually untrue (and he provides no such evidence) but are also irrelevant. Plaintiff has not brought and could not now bring a claim for breach of a collective bargaining agreement under the Railway Labor Act, 45 U.S.C. § 181 et seq. (application of RLA to air carriers.) And in any event such a claim would be predicated on an alleged act—failure to abide by the alleged collective bargaining agreement—occurring well outside the administrative limitations period under discussion here.

[8] Plaintiff claims he "discovered" that some other American non-skycap employees were working more than four hours and that he had been told that no one at American at SFO worked more than a part-time schedule. Putting aside whether such a claim is simply incredible, Plaintiff explicitly testified *in response to his own lawyer's question at deposition* that he "learned" "less than a week after" Mr. Olson told him he could only work four hours a day that some agent and ramp personnel had 6 hour day. (See Plaintiff's Deposition, 181:20-25, 182:1-22, a true and correct copy of which is attached to the Second Declaration of Kenneth R. O'Brien, filed simultaneously herewith.) This clearly suggests that plaintiff's argument that "by August 2005, plaintiff learned that American Airlines allowed employees at all levels of its operation to work six hours shifts" (Pl. Opp., 4:18-20) is not merely unwarranted, but deceptive. Furthermore, if Plaintiff could resurrect an otherwise time-barred claim simply by asking whether the four hour shift put in place in 2001 would continue in effect, the salutary effects of the statute of limitations would be rendered meaningless as it would be subject to manipulation and evisceration. There is no hint that the discrete act of giving plaintiff a four hour shift occurred at any time *other* than in December 2001. Thus there was no new act within the limitations period as in *Porter* when an *already approved transfer was rescinded* within the limitations period. See discussion, *infra*.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.561.5300

FIRMWIDE:85307322.1 009001.1303        8.        07-cv-3527 WHA

1  discrete acts of hours to be worked, schedule of work hours, and location, all were given to him in December
2  2001. His claims with respect to such acts are therefore barred as untimely.

3  **B.  Plaintiff cannot prevail on his claim that his tip income was reduced by unlawful discrimination because he has no evidence that any decisions affecting his employment were based on unlawful animus.**

With respect to any matters remaining in Plaintiff's case, and in order to defeat American's motion, Plaintiff's opposition must set out specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e)(2). Where, as here, Plaintiff will bear the burden of proof at trial on the issues raised by American's motion, Rule 56(e) requires him to go beyond his pleadings and, by either affidavit(s), depositions, or answers to discovery on file, demonstrate which specific material facts are in dispute so as to warrant a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986); *Federal Ins. Co. v. Burlington Northern & Santa Fe Ry. Co.*, 270 F.Supp.2d 1183, 1185 (C.D. Cal. 2003). Plaintiff must come forward with specific admissible evidence demonstrating that an employment decision was made with an improper motive. Reliance on mere speculation, conjecture, or fantasy cannot defeat a motion for summary judgment. *See, e.g., The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151-52 (9th Cir. 1988); *Horn v. Cushman & Wakefield*, 72 Cal. App. 4th 798, 807 (1999) (""To avoid summary judgment, [appellant] 'must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses.' [Citation.] [He] must produce 'specific, substantial evidence of pretext.'"; *Bradley v. Harcourt, Brace and Co.* (9th Cir. 1996) 104 F.3d 267, 270.

Plaintiff complains that his tip income was adversely impacted by a company-wide policy instituted in 2005 of charging passengers $2 per bag for checked bags. He claims that when the change was implemented he was told to accept the new duties "or retire." (Pl. Opp. 5:13-15.) But this is nothing more than a reference to the fact that when the additional duties of cash receipts collection, record keeping, cash transfer and reconciliation functions were required of *all* skycaps, they were—as set forth in American's moving papers—given the option of agreeing to take on the additional duties or take a severance package. (American's motion, Doc. # 24, 5:22-28, 6:1-6; Dec. of Fred Roesti in opposition to motion, Ex. 3 ("Because the restructured position is somewhat different from your current position, you have the option to elect layoff. You would be eligible for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303          9.          07-cv-3527 WHA

regular severance pay...") As noted in American's moving papers, this option was for the skycap, and not American to choose and Plaintiff chose to continue to work.

Realizing that he cannot possibly claim he was forced to retire, he claims that American then "treated him like a pariah" (Pl. Opp. 5:17). But the treatment about which he complains is again nothing more than his time barred complaints: location and hours. (Pl. Opp. 5:18-21.)

Finally, although plaintiff complains that his machine occasionally broke down, he ignores his own admissions at deposition and his own records which establish without dispute that such instances of temporary malfunctions occurred on only 18 occasions out of approximately 640 working days (American's Motion, Doc. # 24, 6:7-19); that the machines used by skycaps employed by G2 are the same as his and that they too suffer temporary breakdowns (Pl. dep. 129:20-25, 130:1-5); that all of his supervisors and managers appear genuinely desirous of getting his machine back into service and that none of them have ever made any remarks suggesting an unlawful motives for any of their actions (Pl. dep., 123:19-25, 124:1-25, 125:1-10, 127:8-24). Finally, he has adduced not a shred of evidence that his podium assignment, or how his machine is repaired, serviced, or maintained were motivated by anyone for unlawful reasons. (Olson Dec., ¶¶ 4, 6; Javier Dec. ¶¶ 4, 7; Harris Dec. ¶ 3, 5.) Instead what he claims is that he—the only American Airlines skycap employee—is limited to using the machine to which he is assigned, but then makes the assertion that G2 employee skycaps apparently are able to log on to and use a number of machines. (Pl. Opp. 2:18-21.) However, plaintiff presents no admissible[9] evidence to controvert that American's skycaps are assigned to use and log on to a *specific* podium so that it can track and account for the baggage tagged and checked by that specific American skycap. (Javier Dec. ¶ 4; Olson Dec. ¶ 4.) Nor do

---

[9] Plaintiff's Opposition purports to cite various pages of Plaintiff's deposition in support of this claim but the pages to which he refers do not even mention this issue. The Roesti declaration has unauthenticated and inadmissible documents attached thereto as Ex. 2 which purport to be information collected from G2 employee skycaps at SFO. Defendant is simultaneously filing objections to these documents. But even if plaintiff presented pertinent pages of his deposition, or if the inadmissible statements were considered, that do nothing to show that a triable issue exists as to the fact that American skycaps are instructed to use the machine to which they are assigned so American can track the baggage tags that skycap processes on a daily basis and can easily account for those bags. (Javier Dec. ¶ 4; Olson Dec. ¶ 4.) Nor do such statements create a triable issue that the podiums are not assigned on any unlawful basis. (Javier Dec., ¶¶ 4, 8; Olson Dec. ¶¶ 4, 6; Harris Dec. ¶¶ 3, 5.) If it is true that a G2 employee could log on to a machine to which he is not assigned, that would not answer the fact that American's policy is to require *its* skycaps to use a specific podium for tracking and productivity purposes.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.561.5300

FIRMWIDE:85307322.1 009001.1303   10.   07-cv-3527 WHA

such statements in any event create a triable issue that the podiums are *not* assigned, serviced or maintained on any unlawful basis. (Javier Dec., ¶¶ 4, 8; Olson Dec. ¶¶ 4, 6; Harris Dec. ¶¶ 3, 5.)

Hence, Plaintiff is left with nothing but conjecture and speculation, which cannot defeat American's Motion. *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151-52 (9th Cir. 1988); *Horn v. Cushman & Wakefield*, 72 Cal. App. 4th 798, 807 (1999); *Bradley v. Harcourt, Brace and Co.* (9th Cir. 1996) 104 F.3d 267, 270.) Because Plaintiff has not adduced any evidence which shows that there is any issue to be tried as to whether the machine to which he was assigned or the manner in which it is maintained and serviced, or concerning the fact that he is supposed to use a specific machine (which like any other, malfunctions from time to time) were *not* the result of unlawful discrimination, American's motion should be granted as to all such claims.

C. **Plaintiff cannot prevail on his claim of retaliation.**

As noted above, Plaintiff claims that he was retaliated against on any basis prohibited by the California Fair Employment and Housing Act are unsupported by any evidence, and American has demonstrated a complete defense thereto. Specifically, this claim as asserted in the complaint is based on his alleged[10] 2001 conversations with Mr. Olson in which Plaintiff claims he told Mr. Olson that the TWA union contract's provisions somehow applied to American's non-union skycaps. (Pl. dep., 72:24-25, 73:1-4.) But even if his testimony that he made such statements to Mr. Olson is given credence, that does not create a triable issue material to the disposition of his case because it is undisputed that such alleged conversations are *not* covered under the FEHA's participation or opposition clauses. (American's Motion, 14:3-9.) And because he has adduced no evidence that any of the acts about which he complains, e.g., curb location assignment, hours, shift and machine assignments were the result of any activity in which he engaged which is protected by the FEHA, Defendant's motion should be granted.

---

[10] As noted in American's moving papers, if the matter proceeds to trial, American's witnesses will contradict much of Plaintiff's testimony. But for purposes of the motion, his testimony is used to demonstrate that notwithstanding his version of events, no triable issue material to the disposition of his claims exists.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303    11.    07-cv-3527 WHA

D.  **Plaintiff cannot prevail on his claim for negligent infliction of emotional distress as his claim fails to state a claim on which relief can be granted and would in any event be barred by the statute of limitations.**

It is by now clear that there is no law which supports plaintiff's claim for negligent infliction of emotion distress. *See, e.g., Edwards v. United States Fid. & Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994). That being the case, plaintiff's third claim for negligent infliction of emotional distress is barred by his exclusive remedy under California's workers' compensation statute. *Fermino v. Fedco, Inc.* (1994) 7 Cal. 4th 701, 713-714. Furthermore, as to any such claim, it is not disputed that the statute of limitations on any such claim is two years. Cal. Code. Civ. Proc. § 335.1. Hence, his claims which are based on his curb location assignment, his hours, or his schedule are barred by the statute of limitation. Accordingly, this claim is barred as a matter of law and the court should enter judgment on the pleadings with regard thereto.

E.  **Plaintiff cannot prevail on his claim for intentional infliction of emotional distress as there is no triable issue of fact material to the disposition of his claim.**

As shown in American's moving papers, Plaintiff's claim for intentional infliction of emotional distress cannot stand if his claim for unlawful discrimination is unsupported by evidence showing the existence of a triable issue of fact material to the disposition of his discrimination or retaliation claims. *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). Plaintiff does not even address this in his opposition, nor does he address the fact that such a claim is barred by its own two year statute of limitations as to the acts about which he complains occurring outside of the limitations period, e.g., his hours, shift and curb location assignment. In consequence, American's motion as to such claim should also be granted.

## IV.
## CONCLUSION

Despite numerous opportunities to oppose the present motion, Plaintiff has failed to adduce any evidence which creates a triable issue of fact material either to his claim or defenses thereto. For the reasons set forth herein, the Court should grant defendant's motion in its entirety.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 561 5300

FIRMWIDE:85307322.1 009001.1303         12.                          07-cv-3527 WHA

Dated: May 23, 2008                    Respectfully submitted,

/s/Kenneth R. O'Brien
KENNETH R. O'BRIEN
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
AMERICAN AIRLINES, INC.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916 581 5300

FIRMWIDE:85307322.1 009001.1303              13.                    07-cv-3527 WHA