IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD E. ANDERSON,

    Plaintiff,

v.

AMR THE PARENT OF AMERICAN AIRLINES INC., and DOES 1 through 5, inclusive,

    Defendants.

No. C 07-03527 WHA

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this employment-discrimination action, defendant American Airlines, Inc., moves for summary judgment as to all asserted claims. This order finds that plaintiff has failed to show the existence of a triable issue of material fact with respect to any of the claims in suit. Accordingly, defendant's motion is **GRANTED**.

## STATEMENT

Plaintiff Edward Anderson, a 73-year old African American, is employed as a "skycap" for defendant American Airlines, Inc., at the San Francisco International Airport. When an AA passenger arrives at the airport, they have the choice of checking in at the AA desk located inside the airport or "curbisde" — *i.e.*, directly adjacent to where passengers are dropped off. Anderson's primary job was to check in those passengers who chose the latter method to check in. Prior to beginning his employment with AA, Anderson was employed as a skycap for Trans World Airlines. In December 2001, however, TWA filed for bankruptcy and AA acquired its

assets. At that time, Anderson, along with TWA's other skycaps, were offered and accepted employment with AA. All of the other TWA skycaps who began working for AA have since retired. Anderson is the only remaining skycap employed by AA. Before December 2001, AA had no skycap employees, but instead used an outside contractor — Globe (now known as G-2) — to hire employees to perform skycap duties. AA still uses Globe for its skycap program.

Anderson contends that when he began working for AA in December 2001 that he requested to have a six-hour shift (Anderson Decl. ¶ 4). Instead, Anderson was given a shift from 8:00 AM to Noon. Anderson now maintains that he learned soon thereafter that some G-2 skycaps were regularly given six-hour shifts (*id*. at ¶ 7). At his deposition, Anderson admitted that he never made any other request to change shifts (Anderson Dep. 143–144):

> Q. [A]fter it was established that you would start at 8:00, did you ask anyone else to start at 6:30?
>
> A. No, is that what you were saying, 6:30.
>
> Q. Or any other earlier time?
>
> A. No.

Anderson testified that his curbside location — the west end of the airport — was also determined in December 2001.

In August 2005, AA instituted a new baggage policy: all customers who checked in bags curbside would have to pay a two-dollar fee per bag. Before the policy was implemented, curbside check in was provided at no additional cost. Skycaps before and after the implementation of the policy were always permitted to solicit and receive tips. Anderson contends that this policy had a significant impact on his salary because customers were now less inclined to give skycaps tips due to the additional fee. Anderson also maintains that he was the principal skycap to protest the implementation of the new policy to AA. The additional fee applied to both the AA and G-2 skycaps. At the time the policy was implemented, AA skycaps were given the option of continuing employment with the two-dollar fee policy or electing to terminate employment and receive severance pay (Olson Decl. ¶ 5). Anderson chose to continue employment.

2

Anderson now maintains that throughout his entire employment with AA he was treated unfairly and given an undesirable curbside location. In particular, Anderson argues that he was assigned by himself to the least desirable location for curbside check in — the west end of the airport — and prohibited from working at any other stations (Anderson Dep. 135:14–23). Notably, vehicle traffic in the departure terminal at the San Francisco airport moves from east to west. Passengers are thus more likely to get dropped off at the east end. Anderson further argues that he was forced to operate only one curbside check-in machine while other skycaps were allowed to use multiple machines (*ibid.*). When this machine broke down, Anderson contends that he would be unable to check in any curbside passengers (*id.* at 95:1–25). AA argues that "American skycaps were required to use their own machine so that the baggage tags they processed each shift could be accounted for" (Olson Decl. ¶ 4).

Anderson filed an administrative charge of discrimination with the California Department of Fair Employment and Housing on January 24, 2006, and was issued a right to sue letter on January 25, 2006. The instant complaint was filed on January 9, 2007, alleging AA discriminated against Anderson based on his race and age. The complaint recites four claims: (1) injunctive relief under FEHA; (2) damages under FEHA; (3) negligent infliction of emotional distress; and (4) intentional infliction of emotional distress. Defendant now moves for summary judgment as to all claims. In opposing defendant's motion, plaintiff untimely filed two separate oppositions. The Court has since allowed the first opposition to be considered (Dkt. 43). Plaintiff has given no justification, however, for its untimely filing of the second opposition. In addition, a large portion of the material added to the second opposition filing is hearsay and unsworn factual allegations. The second opposition filing will thus not be considered.[1]

---

[1] Plaintiff included as an attachment to the second opposition filing several questionnaires given to other skycaps where they purport to give their opinions on whether plaintiff was treated unfairly. These questionnaires are entirely unauthenticated and unsworn.

3

**ANALYSIS**

Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).[2]

The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000). When the moving party meets its initial burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**1.   ARE ANY OF THE ALLEGED DISCRIMINATORY ACTS TIME BARRED?**

Defendant first contends the majority, if not all, of the alleged discriminatory acts occurred outside of the limitations period. It is not entirely clear from Anderson's complaint and briefing exactly what actions are alleged to have been discriminatory. This order will assume Anderson alleges the following acts were discriminatory: (1) his shift and locations assignments; (2) the implementation of the two-dollar per bag fee; (3) the unfair treatment he received when his machine broke down; and (4) his inability to use multiple machines for check-in purposes.

The statute of limitations period begins to accrue on an act of discrimination when that

---

[2] Unless indicated otherwise, internal citations and quotations are omitted from all cites.

4

act "occurred." As the Supreme Court held in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-113 (2002):

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." . . . [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . . The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

"A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But if an employer engages in a series of separately actionable intentionally discriminatory acts, then a fresh violation takes place when each act is committed." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2164 (2007).

Therefore, while Anderson can use prior acts of alleged discrimination as background evidence to support a timely claim, he cannot recover for these prior acts if they fell outside the statute of limitations. Under FEHA, "no complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." Cal. Gov. Code § 12960; *see also Cucuzza v. City of Santa Clara*, 104 Cal.App.4th 1031, 1040 (2002). Plaintiff filed a charge with the DFEH on January 24, 2006. He cannot recover under FEHA for any event that took place before January 2005 (a year before the filing with the DFEH). The statute of limitations period for negligent and intentional infliction of emotional distress — Anderson's third and fourth claims, respectively — is two years. Cal. Code Civ. Pro. § 335.1. Anderson is thus barred from seeking damages from any act occurring before January 2004 with respect to his negligent and intentional infliction of emotional distress claims.

Anderson contends that the statute of limitations does not bar any of his claims. This blanket assertion is incorrect. At his deposition, Anderson admitted that his shift and location assignments were given to him when he first began employment with AA in December 2001.

5

1  He also admitted that he never requested to be reassigned to a different shift time or location
2  (Anderson Dep. 143–144). While his previous shift and location assignment can be considered
3  as background evidence of a timely claim, they cannot serve as discrete acts of discrimination
4  upon which Anderson can recover for any of his claims. The alleged discriminatory acts — the
5  assignments themselves — were made well outside of the limitations period.

6  In terms of the remaining acts of discriminatory conduct, a specific date of occurrence is
7  only given for the implementation of the two-dollar per pag policy. That date — August 2005
8  — *does* fall within the limitations period for all of Anderson's claims. Because it is unclear
9  when the other allegedly discriminatory acts occurred, this order will assume that they all took
10 place during the limitations period.

### 2. CAN ANDERSON ESTABLISH RACE OR AGE DISCRIMINATION?

12 "California has adopted the three-stage burden shifting test established by the United
13 States Supreme Court for trying claims of discrimination . . . based on a theory of disparate
14 treatment." *Hammond v. County of Los Angeles*, 160 Cal.App.4th 1579, 1593 (2008). "In order
15 to evaluate claims of intentional discrimination where intent itself is generally impossible to
16 prove, courts apply a burden-shifting analysis [developed in *McDonnell Douglas Corp. v.
17 Green*, 411 U.S. 792, 802–03 (1973)]. The analysis consist of three steps. *First*, "the
18 *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case
19 of discrimination. This step is designed to eliminate at the outset the most patently meritless
20 claims, as where the plaintiff is not a member of the protected class or was clearly unqualified,
21 or where the job he sought was withdrawn and never filled. While the plaintiff's prima facie
22 burden is 'not onerous,' he must at least show 'actions taken by the employer from which one
23 can infer, if such actions remain unexplained, that it is more likely than not that such actions
24 were based on a [prohibited] discriminatory criterion.'" *Guz*, 24 Cal. 4th at 354–55. *Second*, if
25 the plaintiff has established a prima facie case, "a presumption of discrimination arises. This
26 presumption, though 'rebuttable,' is 'legally mandatory.' . . . Accordingly, at this trial stage,
27 the burden shifts to the employer to rebut the presumption by producing admissible evidence,
28 sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that

6

its action was taken for a legitimate, nondiscriminatory reason." *Guz*, 24 Cal. 4th at 355–56. *Third*, "[i]f the employer sustains this burden, the presumption of discrimination disappears. The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias. The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Guz*, 24 Cal. 4th at 356. *See also McDonnell v. Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### A. Did Anderson Establish a Prima Facie Case of Discrimination?

Anderson has met the initial burden of establishing a prima facie case for some of his allegations of discriminatory conduct. In particular, Anderson has established a prima facie case based on the unfair treatment he received when his check-in machine broke down. The *McDonnell Douglas* test requires a plaintiff to provide evidence that: (I) he was a member of a protected class; (ii) he was qualified for the position she sought or was performing competently in the position he held; (iii) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (iv) some other circumstance suggests discriminatory motive. *Guz*, 24 Cal. 4th at 355.[3]

Here, it is undisputed that plaintiff is a member of a protected class. No evidence has been presented one way or the other to demonstrate that Anderson was performing his job competently. This order will assume *arguendo* that he was. Anderson has also provided enough evidence to show the final two requirements of a prima facie case have been satisfied with respect to his allegations that he was discriminated against by being precluded from working on other check-in machines when his broke down.

The implementation of the two-dollar per bag policy by itself, however, is not enough to show any discrimination. The policy was implemented uniformly for *all* skycaps. While Anderson may very well be correct that his salary was negatively impacted as a result of the

---

[3] In terms of age discrimination, Anderson need only show that he is of forty years of age or older to be a member of a protected class. *See Hersant v. Dept. of Social Services*, 57 Cal. App. 4th 997, 1003 (1997).

7

policy implementation, he simply does not show any discriminatory conduct. He also does not show any discriminatory action that was taken subsequent to his alleged protest over the implementation of the policy. Nothing on the record indicates he was treated any differently before or after the policy was implemented. The only evidence Anderson indirectly points to was AA's offer to continue employment or to elect severance pay. Once again though, this option was given to all AA skycaps — *not* just Anderson. Anderson was free to make his own decision whether or not he wished to continue employment.

Anderson's inability to work at different check-in machines, however, does establish a prima case of discrimination. Anderson testified that he was the only skycap that was required to use a specific check-in machine at the airport. When this machine broke down, Anderson was unable to work and had to wait for the machine to get fixed thereby depriving him of tips in the meantime (Dep. 102:7–12). A jury could reasonably find under these circumstances that Anderson was discriminated against as a result of his age or race.

### B.   Was A Legitimate, Nondiscriminatory Reason Provided?

Given that plaintiff has made a prima facie showing, the burden shifts to AA to show that its action was taken for "a legitimate, nondiscriminatory reason." *Guz*, 24 Cal. 4th at 355–56. AA's purported legitimate reason for assigning Anderson to a specific check-in machine was so that it could track the work (including the baggage checked in) and the productivity of its employees (Olson Decl. ¶ 4). For obvious reasons, ensuring that all bags that are processed are also accounted for and tracked is a desirable goal in air travel. This order therefore finds that AA has provided a legitimate, nondiscriminatory reason for its action.

### C.   Did Anderson Show "Pretext?"

Anderson must now come forward with evidence indicating that AA's proffered reason is merely pretextual. In *Noyes v. Kelly Services*, 488 F.3d 1163, 1170 (9th Cir. 2007), the Ninth Circuit held (emphasis in original):

> [A] plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer. All of the evidence [as to pretext] — whether direct or indirect — is to be considered

8

> cumulatively. Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial. However, that requirement is tempered by our observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is "hardly an onerous one."

Anderson has failed to make any showing of pretext. Anderson has not even attempted to address AA's proffered explanation for not allowing Anderson to work on multiple check-in machines. In this regard, no indirect evidence of pretext has been shown.

In addition, Anderson's direct evidence is scant and inadequate. *First*, when asked at his deposition what facts led him to believe that AA's decision to implement the two-dollar per bag policy was based on race, Anderson stated the following (Anderson Dep. 147:9–148:1):

> Q. What facts are you aware of that make you believe that it was done to impact you as a minority?
>
> A. Well, they did not do it the bartenders out there in American Airlines' room. They did not cut their tips. There is no charge —
>
> Q. Are you aware of any other facts that suggest to you that you were treated differently in your employment at American because of your race?
>
> A. Yes, that. That's one reason.
>
> Q. But my question was, are you aware of any other facts that suggest that this action was taken by American because if your race?
>
> A. Age.
>
> Q. I'm only talking about race.
>
>   . . .
>
> A. No, I can't say.

The only "fact" that Anderson cites to is that the bartenders inside the airport were not asked to implement any policy that affected their tips. But Anderson gives no explanation of why the bartenders should be compared to skycaps to begin with. He also does not refute — as discussed above — that the policy implementation (*i.e.*, the only thing he could point to at his deposition) was uniformly applied to *all* skycaps. *Second*, in terms of age discrimination, Anderson admitted that the majority of skycaps who work at the San Francisco airport were over the age of forty (*id*. at 47:1–4):

> Q. Do you know if [the skycaps] are all over the age of 40?

9

1         A. Not all of them, no.

2         Q. Are most of them over 40?

3         A. Most of them.

*Third*, the record also shows, and Anderson acknowledges, that the G-2 skycaps used the same type of check-in machines as Anderson, that all the machines broke down on occasion, and that the same people who were called to fix the G-2 check-in machines also fixed Anderson's (*id.* at 129:20–25, 130:1–5, and 134:4–14). *Fourth*, at his deposition Anderson produced a little over 700 pages of documents relating to his employment with AA, including notations indicating when his check-in machine broke down over the course of his entire employment with AA (Adams Decl. ¶ 2). According to defendant's sworn declaration, Anderson's notations showed that his check-in machine broke down eighteen times out of approximately 640 total possible work days (*ibid.*). This amounts to roughly 2.8% of the total work days. This low number hardly rises to a level warranting any skepticism. Even during the time Anderson's machine was broken, he was paid at his normal hourly pay (Anderson Dep. 121:16–25).

      In sum, Anderson has offered no evidence demonstrating that any actions taken by AA were racially or age motivated. The only fact that Anderson does cite to in all of his briefings is that the skycaps who came over from TWA (all were African American) no longer work for AA (Anderson Decl. 8). These skycaps, however, were all older than Anderson when they began working for AA and have since retired. Anderson was the youngest skycap among the entire group. Other than that, Anderson only provides mere speculation that he was discriminated against. Such speculation though does not create a triable issue of fact to preclude summary judgment. *See Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal.App.4th 798, 807 (1999). Anderson's discrimination claims brought under FEHA are thus **DISMISSED**.

      **3.**      **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

      California courts have rejected negligent infliction of emotional distress claims where the underlying conduct alleged was intentional. *See Semore v. Pool*, 217 Cal.App.3d 1097, 1105 (1990). Here, all the conduct that Anderson relies on to support his negligent infliction of emotional distress claim was intentional. *See Cole v. Fair Oaks Fire Protection Dist.*,

43 Cal.3d 148, 160 (1987) ("An employer's supervisory conduct is inherently 'intentional.'") Anderson does not specifically address this issue in his opposition. Accordingly, his claim for negligent infliction of emotional distress is **DISMISSED**.

### 4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Anderson's last claim is for intentional infliction of emotional distress. The elements of an intentional interference of emotional distress claim are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *KOVR-TV, Inc. v. Whittle*, 31 Cal. App. 4th 1023, 1028 (1995).

AA misconstrues the nature of Anderson's burden with respect to this claim. According to AA, if Anderson's discrimination claim is dismissed then his intentional interference of emotional distress claim must also be dismissed (Br. 14). This is not an accurate statement of the law. Anderson pled an independent claim for intentional infliction of emotional distress. Anderson must, therefore, independently demonstrate the existence of the above three elements. Anderson has failed to meet his burden. The standard for satisfying the first element is extraordinarily high: "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *KOVR-TV*, 31 Cal. App. 4th at 1028 (1995). Anderson has not presented any evidence or argument that AA's conduct, discriminatory or not, rose to this level of outrageousness. Anderson's claim for intentional infliction of emotional distress is therefore **DISMISSED**.

### CONCLUSION

For the above-stated reasons, defendant's motion is **GRANTED** with regard to all claims.

Dated: June 6, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11